**FILED**

**October 10, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 12:49 PM**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### COURT OF WORKERS' COMPENSATION CLAIMS
### AT MEMPHIS

| | | |
|---|---|---|
| **RUEBEN V. HILL,** | ) | **Docket No.: 2016-08-0007** |
| **Employee,** | ) | |
| **v.** | ) | |
| **KROGER** | ) | **State File Number: 101140-2015** |
| **Employer,** | ) | |
| **And** | ) | |
| **SEDGWICK CMS, INC.,** | ) | **Judge Amber E. Luttrell** |
| **Insurance Carrier.** | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER DENYING REQUESTED BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on September 15, 2016, upon the Request for Expedited Hearing filed by Rueben Hill pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is whether Mr. Hill gave proper notice of a work-injury and whether he sustained an injury arising primarily out of and in the course and scope of his employment. For the reasons set forth below, the Court holds Mr. Hill did not come forward with sufficient proof establishing he is likely to prevail at a hearing on the merits on the focal issues and denies his request for medical and temporary disability benefits.[1]

### History of Claim

Beginning November 10, 2014, Mr. Hill worked for Kroger Distribution Center in Memphis, Tennessee as a perishable order selector. This claim involves an alleged work-related injury to Mr. Hill's hands and arms on March 2, 2015.[2] Kroger asserted it did not receive notice of an alleged work-related injury until December 10, 2015. (Ex. 2.) It subsequently denied the claim on January 12, 2016, contesting proper notice and lack of

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

[2] The Court notes discrepancies regarding the date of injury. At the hearing, Mr. Hill testified the injury occurred on March 2, 2015. However, the PBD lists a March 3, 2015 date of injury; the DCN lists an April 20, 2015 date of injury; and the REH lists a May 1, 2015 date of injury.

1

medical proof supporting a work-related injury. (Ex. 3.)

In support of his claim for workers' compensation benefits, Mr. Hill, a self-represented litigant, provided the following testimony:

Mr. Hill's job consisted of pulling orders at a rapid pace. He worked eight-hour shifts, and sometimes ten-hour shifts. He lifted anywhere from fifty to seventy-five pounds of perishable food products in performing this position. He considered the lifting requirement of his job to be very heavy. After working on March 2, 2015, Mr. Hill woke the next morning feeling that his "hands were on fire." Consequently, he sought treatment at the emergency room at Baptist Memorial Hospital. The emergency room record was not admitted into evidence; however, Mr. Hill submitted a work slip reflecting his visit on March 3 and stating he may return to work on March 5. (Ex. 7.)

Mr. Hill testified he returned to work to submit his off work slip and speak to John Gibson, Kroger's Safety Manager. The parties dispute the timing and substance of the conversation between Mr. Hill and Mr. Gibson. According to Mr. Hill, he went to the facility and "let Mr. Gibson know." Mr. Gibson looked at his hands and drove him in a cart to the facility's wellness center where a nurse examined his hands. Mr. Gibson told Mr. Hill he did not know "if his hands would qualify for workers' comp." Mr. Hill stayed off work approximately one month and sought unauthorized treatment for his symptoms.

Mr. Hill further testified at the Expedited Hearing that he had conversations with Janet Patrone and Jacqueline Moore in Kroger's Human Resources department requesting enrollment in Kroger's health insurance so he might obtain treatment for a pre-existing shoulder injury from high school and a dental problem. He denied seeking health insurance for his alleged work-injury. However, Mr. Hill testified by affidavit that he gave notice of a work-injury to his wrist and elbow to Kroger's Human Resources department, but was never provided a panel of physicians. (Ex. 1.) The parties also dispute the substance of these conversations.

The medical records admitted into evidence indicated Mr. Hill sought unauthorized treatment with Dr. William Knight at Memphis Orthopedic Group on April 24, 2015. (Ex. 6.) He complained of bilateral hand pain and reported trouble for four months. Specifically, Mr. Hill reported symptoms of numbness and tingling. Following an examination, Dr. Knight diagnosed bilateral carpal tunnel syndrome and ordered an EMG of both upper extremities, which was negative for carpal tunnel and positive for left cubital tunnel syndrome. For treatment, Dr. Knight ordered physical therapy.

On May 5, Mr. Hill saw Julie Dixon, an occupational therapist at Memphis Orthopedic Group. *Id.* He gave Ms. Dixon a history of symptoms developing over the last four months. Ms. Dixon noted, "He noticed after work he would have burning sensation in hands/wrists/elbows." Id. Ms. Dixon further noted:

2

> He states he has not been working due to his injuries. He states it is not work related injury-MD has released him to light duty but HR at work won't honor light duty since he is not under WC so they have advised him at his work to seek out disability in the interim.

*Id.*

Mr. Hill further reported he enjoyed weightlifting and boxing, but was doing neither "at that time." Mr. Hill returned to Ms. Dixon for therapy complaining of triggering type symptoms in the "right LF and left RF/LF more so."[3] *Id.* Ms. Dixon commented, "Patient continues to have somewhat vague complaints." Mr. Hill continued therapy for his trigger finger and hand complaints, and on May 21, he informed Ms. Dixon that he was better and his only residual issue was triggering on the left. She noted, "He desires to RTW and also to have his "triggering" resolved." *Id.*

Mr. Hill returned to Dr. Knight on May 29, and reported improvement in his numbness following a cubital tunnel injection, but complained of triggering in his third and fourth fingers. Dr. Knight diagnosed trigger finger and took Mr. Hill off work from April 23 through May 28. Upon a return visit on June 9 for left arm pain and parasthesias in his little finger, Dr. Knight diagnosed ulnar nerve compression and scheduled decompression surgery. Dr. Knight performed surgery on Mr. Hill's left arm on June 17. Specifically, he performed a left cubital tunnel release with decompression of the ulnar nerve. (Ex. 9.) Dr. Knight opined Mr. Hill would be off work four to six weeks post-surgery.

During his follow up treatment, Mr. Hill noted improvement in the parasthesias in his hand until July 21, when he reported working out with kettle balls that made his elbow sore. (Ex. 6). Dr. Knight treated him with pain medication, injections in the elbow, and trigger finger injections in the third and fourth fingers on the left hand. *Id.*

Mr. Hill continued treating with Dr. Knight through December 2015. Throughout his treatment, he complained of intermittent popping of his left ulnar nerve over the medial epicondyle and continued triggering of his third and fourth fingers. *Id.* Based upon his ongoing symptoms, Dr. Knight recommended a second surgery with trigger finger release and medial epicondyle excision. Mr. Hill's surgery scheduled on January 6, 2016, was canceled because Mr. Hill could not afford the surgery.

Mr. Hill admitted into evidence documentation from MetLife indicating he drew short-term disability from Kroger from April 24 through July 28. (Ex. 10.) Mr. Hill no

---

[3] The Court understood "right LF" to mean the right little finger and "left RF/LF" to mean the left ring finger and little finger.

longer works for Kroger; he has since worked as a groundskeeper for six-months through a temporary staffing service. Mr. Hill testified the staffing service fired him because he could not perform the lifting requirements of the job. He subsequently applied for retail sales jobs, but was not hired. Mr. Hill stated he can no longer physically do what he used to do because of pain in his left elbow extending up to his neck. Mr. Hill wears a brace on his left arm to assist him with nerve pain. He currently works as a groundskeeper at the apartment complex where he resides.

Mr. Hill acknowledged his hobbies of weightlifting and boxing. However, he testified he reduced his boxing to one thirty-minute session every two or three weeks after he started working at Kroger and denied his injuries resulted from his weightlifting and boxing activities. He testified he currently cannot do more than five or six push-ups without pain in his left arm.

For its case, Kroger offered the testimony of Janet Patrone, Jacqueline Moore, and John Gibson. The details of their testimony concerning notice of a work injury differ in significant ways from Mr. Hill's testimony.

*Testimony of Janet Patrone*

Janet Patrone works in human resources at Kroger's Distribution Center. Among other duties, Ms. Patrone assists newly hired employees with determining eligibility for health insurance. Ms. Patrone testified Mr. Hill came to see her to sign up for health insurance. He had moved and not received the necessary paperwork to enroll. Ms. Patrone assisted Mr. Hill by communicating with the benefits department to sign him up for insurance. She testified Mr. Hill never reported a work-injury to her.

Ms. Patrone further testified to a conversation she overheard between Mr. Hill and Ms. Moore, Kroger's human resources manager. Ms. Patrone explained she and Ms. Moore share an office and their desks are in close proximity to each other. She overheard Mr. Hill talking to Ms. Moore about his hands and stating his problems dated back to before he started working at Kroger in November 2014.

*Testimony of Jacqueline Moore*

Jacqueline Moore, Kroger's HR Manager, testified Mr. Hill came to her in April 2015, seeking help with obtaining health insurance and short-term disability. He told Ms. Moore his "hands and arms were hurting at times and the problems pre-dated his employment at Kroger." She assisted Mr. Hill with short-term disability (STD) paperwork. Ms. Moore confirmed MetLife, Kroger's third-party administrator for STD insurance, would not approve STD benefits for an employee alleging a work-related injury. In his application for STD, Metlife asked if his condition was a work-related injury. Ms. Moore stated that had he answered yes, then MetLife would have denied STD

4

benefits. However, Mr. Hill's STD benefits were approved. Finally, Ms. Moore testified consistently with Ms. Patrone that Mr. Hill never reported to her that his condition with his hands and arms was related to a work-injury at Kroger.

*Testimony of John Gibson*

John Gibson currently works in inventory replenishment as a buyer for Kroger in Cincinnati. However, at all times relevant to this claim, he worked in Memphis' distribution center as the Safety Manager.

Concerning the alleged injury, Mr. Gibson testified Mr. Hill first approached him on April 23, 2015, concerning his hands and arms. In that conversation, Mr. Hill said his hands hurt and his fingers were tight at work. Based on Mr. Hill's complaints, Mr. Gibson began filling out accident report paperwork. However, a few minutes into the conversation, Mr. Hill stated he previously spoke to Ms. Patrone and Ms. Moore regarding obtaining personal health insurance and requesting short-term disability for this condition, and that it pre-existed his employment at Kroger. Consequently, Mr. Gibson stopped the workers' compensation paperwork, did not file a claim, and referred Mr. Hill back to human resources. However, as a courtesy, Mr. Gibson testified he accompanied Mr. Hill to the onsite wellness center to see the nurse that day to "check out his hands." Mr. Gibson advised Mr. Hill that he was not eligible to continue care in the wellness center since his condition was not a workers' compensation injury.

Eight months later, Sedgwick, Kroger's third-party administrator for workers' compensation, contacted Mr. Gibson on December 23, 2015, and notified him that Mr. Hill's counsel sent correspondence alleging a work related injury. The contact at the third-party administrator instructed Mr. Gibson to file Mr. Hill's claim.[4] Sedgwick filed the Notice of Denial after receiving the claim paperwork filed by Mr. Gibson. Between April 2015 and December 2015, Mr. Gibson did not receive any notification from Mr. Hill or his counsel that he claimed a work-related injury.

Mr. Hill filed a Petition for Benefit Determination (PBD) seeking medical and temporary disability benefits for an injury described as "left hand/fingers" and "ulnar nerve damage/trigger fingers." (T.R. 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice (DCN) describing the body parts injured as "both hands and wrists." Mr. Hill subsequently filed a Request for Expedited Hearing.

At the Expedited Hearing, Mr. Hill asserted that his job duties of lifting fifty to seventy-five pounds caused an injury to his arms on March 2, 2015. His primary

---

[4] The Court notes Mr. Hill initially had attorney representation in this claim. His attorney withdrew as counsel on August 1, 2016.

5

complaint at the hearing was nerve pain in his left elbow extending up to his neck, which he causally related to his work injury at Kroger. Thus, he argued he is entitled to workers' compensation benefits.

Kroger countered Mr. Hill failed to give proper notice of any work-related injury. Further, Kroger contended the extensive medical records failed to support a work-related injury. Finally, Kroger argued the submitted medical records do not support a conclusion that Mr. Hill sustained an elbow injury.

## Findings of Fact and Conclusions of Law

In general, Mr. Hill bears the burden of proof on all *prima facie* elements of his workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). However, Mr. Hill need not prove every element of his claim by a preponderance of the evidence at this Expedited Hearing stage in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Rather, he must come forward with sufficient evidence from which this court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015).

### *Motion to Dismiss*

In this case, Kroger moved for dismissal at the close of Mr. Hill's proof. Because this Court sits without a jury, it will consider the motion as one for involuntary dismissal under Tennessee Rule of Civil Procedure 41.02(2), which provides:

> After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.

In support of its motion to dismiss, Kroger argued that Mr. Hill failed to prove medical causation because he did not offer any expert medical proof of causation and his testimony, alone, as a lay witness, is insufficient to prove causation. The Court agrees. Mr. Hill did not present medical proof in his case in chief supporting medical causation.

However, at this stage of the proceedings, Mr. Hill need not prove all elements of his case, including medical causation, by a preponderance of the evidence. Because the instant case comes to the Court in the posture of an Expedited Hearing, the Court is required to apply the standard previously stated. Specifically, in order to recover the

6

requested benefits, Mr. Hill must show, based upon the evidence presented at this Expedited Hearing, that he is likely to prevail at a hearing on the merits. Tenn. Code Ann. §50-6-239(d)(1) (2015).

Such being the case, the Court notes the requirement of Tennessee Code Annotated section 50-6-102(13)(B)(2015) that an employee must show by a preponderance of the evidence that the employment contributed more than fifty percent (50%) to the injury has yet to attach to this interlocutory stage of the proceedings. For now, Mr. Hill is not required to prove by a preponderance of the evidence all elements of Tennessee Code Annotated section 50-6-212 (2015) when the issues are medical benefits and temporary disability benefits.

Accordingly, the Court denies Kroger's motion to dismiss. However, this denial should not be construed in any way to either obviate the need for adequate proof of medical causation under the applicable standard at a Compensation Hearing or to prevent either party from presenting additional evidence at such hearing to reverse or modify this interlocutory denial of the motion to dismiss. See *McCord v. Advantage Human Resourcing*, No. 2014-06-0063 (Tenn. Work. Comp. App. Bd., March 27, 2015) *5.

*Application of Law to Facts*

Having addressed the motion to dismiss, the Court will now analyze the evidence under the applicable standard of proof. In denying compensability of this claim, Kroger asserted Mr. Hill failed to give proper notice of a work-related injury. For the following reasons, the Court agrees.

Tennessee Code Annotated section 50-6-201(a)(2015) requires "every injured employee" to "immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable," to provide written notice of an injury to an employer who does not have actual notice. If the employee fails to do so within thirty days, "no compensation shall be payable." *Id.* The notice must "state in plain and simple language . . . the time, place, nature, and cause of the accident resulting in injury." Tenn. Code Ann. § 50-6-201(a)(2)(2015). Our Appeals Board explains the reason for the notice requirement as follows:

> The notice requirement contained in section 50-6-201 exists so that an employer will have an opportunity to make a timely investigation of the facts while still readily accessible, and to enable the employer to provide timely and proper treatment for an injured employee. Consequently, the giving of statutory notice to the employer is an absolute prerequisite to the right of an employee to recover compensation under the workers' compensation law. When lack of notice is raised as a defense, the burden is on the employee to show that notice was given,

the employer had actual notice, or the failure to give notice was reasonable under the circumstances.

*Hosford v. Red Rover Preschool*, No. 2014-05-0002, 2014 TN Wrk. Comp. App. Bd. LEXIS 1, at *15 (Tenn. Workers' Comp. App. Bd. Oct. 2, 2014)

Guided by this authority, the Court first notes the alleged date of injury is unclear given the inconsistent dates of injury asserted throughout the claim. The PBD lists a March 3, 2015 date of injury; the DCN lists an April 20, 2015 date of injury; and the REH lists a May 1, 2015 date of injury. Despite the discrepancies in the documentation, Mr. Hill unequivocally testified at the Expedited Hearing that he sustained the injury on March 2, 2015 from his work duties. He testified his "hands were on fire" the following morning, which led him to the emergency room on March 3. Although Mr. Hill admitted into evidence an off-work slip from Baptist Memorial Hospital confirming an emergency room visit on March 3, the Court finds the note fails to support Mr. Hill's claim that he sought treatment for a work-related injury sustained on March 2. In fact, the note is silent as to the reason for the visit.

Like the date of injury, the Court also finds Mr. Hill testified inconsistently concerning when he gave notice of a work injury. At the outset, the Court finds there was no proof that Kroger had actual notice of any March 2 injury. Likewise, there was no proof of written notice to Kroger within thirty days of the alleged March 2 injury. Therefore, the Court considers whether Mr. Hill met his burden of proof by providing a "reasonable excuse" for this failure and whether Kroger suffered prejudice by his failure to give proper written notice.

Mr. Hill testified by affidavit he gave notice when he "notified Kroger Human Resources about [his] work-related wrist and elbow injury, but was never provided with a panel of physicians for treatment of [his] work-related injury." However, at the Expedited Hearing, Mr. Hill testified he only spoke to Ms. Patrone and Ms. Moore in human resources regarding his need for insurance for a prior shoulder injury from high school and a dental problem. The only other proof offered by Mr. Hill concerning verbal notice was his testimony that he went to see Mr. Gibson at the facility shortly after his March 2 injury and "let Mr. Gibson know." However, he failed to testify as to *what* specifically he told Mr. Gibson.

Contrary to Mr. Hill's testimony, Ms. Patrone, Ms. Moore, and Mr. Gibson all testified consistently that Mr. Hill did not report any work-related injury to them. Rather, he told them his condition with his hands pre-existed his employment at Kroger. The Court finds the testimony of Kroger's witnesses more persuasive and supported by the evidence. The Court further finds Mr. Hill did not speak to Mr. Gibson concerning any hand complaints until April 23, 2015, more than thirty days after Mr. Hill testified he sustained an injury on March 2, and in that conversation he did not notify Mr. Gibson of

8

an alleged work-related injury. Mr. Gibson candidly and credibly testified that Mr. Hill complained his hands were hurting and his fingers were tight, which prompted him to begin drafting an accident report. However, Mr. Gibson discontinued the accident report process *only after* Mr. Hill informed him that he was working with Ms. Patrone and Ms. Moore to obtain personal health insurance and short term disability for his condition because it pre-existed his employment at Kroger. The Court finds it reasonable to conclude by Mr. Gibson's actions that he would have initiated a workers' compensation claim had Mr. Hill not specifically advised him his hand and arm conditions were not work-related.

Moreover, the Court finds Mr. Hill's statement to his own physical therapist, Ms. Dixon, that his injury was not work-related, and his actions in filing for short-term disability further supports the employer's testimony. Thus, the Court holds Mr. Hill failed to provide notice or satisfy his burden to show his failure to give notice was reasonable under the circumstances.

The Court further finds Kroger was prejudiced by the failure to give proper notice of a work injury since Mr. Hill incurred the expense of unauthorized treatment, including surgery, over the course of nine months.

Although Mr. Hill did not specifically articulate a gradually-occurring injury at the Expedited Hearing, the Court notes such an argument was previously raised in a position statement by Mr. Hill's former counsel. Moreover, Mr. Hill described how his injury occurred in the PBD as "pulling and lifting 50 lbs. to 100 lbs. daily for 8 or more hours," and Mr. Hill testified at the hearing to "wear and tear" to his body from his lifting duties at work. Thus, the Court will address it as an alternative argument. Tennessee Code Annotated section 50-6-201(b) (2015) provides:

> In those cases where the injuries occur as the result of gradual or cumulative events or trauma, then the injured employee . . . shall provide notice of the injury to the employer within thirty (30) days after the employee:
>
> (1) Knows or reasonably should know that the employee has suffered a work related injury that has resulted in permanent impairment; or
> (2) Is rendered unable to continue to perform the employee's normal work activities as the result of a work-related injury and the employee knows or reasonably should know that the injury was caused by work-related activities.

Thus, employees who suffer gradually-occurring injuries are relieved from the notice requirement until they know or reasonably should know that their injury was caused by their work and that the injury has either impaired them permanently or has

9

prevented them from performing normal work activities. *Banks v. United Parcel Serv., Inc.*, 170 S.W.3d 556, 561 (Tenn. 2005).

Mr. Hill testified he was unable to work as a result of his alleged work-related injury on March 3, when he sought treatment at an emergency room and was taken off work. Thus, to the extent that Mr. Hill alternatively contends he suffered a gradually-occurring injury, the Court finds he still failed to provide proper notice within thirty days of March 3, when he testified he could not work as a result of his alleged work injury.

In sum, the Court holds as a matter of law that Mr. Hill is not likely to prevail at a hearing on the merits regarding notice. Accordingly, Mr. Hill's request for medical and temporary disability benefits must be denied.

Finally, had Mr. Hill proven he was likely to prevail at a hearing on the merits establishing sufficient notice, the Court further finds there was no proof admitted into evidence supporting medical causation at this interlocutory stage. The only medical record submitted that mentioned work-relatedness was Ms. Dixon's PT note of May 5, where she documented that Mr. Hill reported his condition was *not* work related. Because Mr. Hill has not proven medical causation of his alleged injury, the Court holds he did not come forward with any medical proof from which this Court may conclude he is likely to prevail at a hearing on the merits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Hill's claim against Kroger and its workers' compensation carrier for the requested medical and temporary disability benefits is denied.

2. **This matter is set for an Initial (Scheduling) Hearing on December 12, 2016, at 10:00 a.m. Central Daylight Time**.

3.

**ENTERED this the ___10th___ day of October, 2016.**

**Judge Amber E. Luttrell**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

10

An Initial (Scheduling) Hearing has been set with **Judge Amber Luttrell, Court of Workers' Compensation Claims. You must call toll-free at 855-543-5039 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and

11

accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. Employee's Affidavit
2. Employer's First Report of Work Injury or Illness
3. Notice of Denial of Claim for Compensation
4. Wage Statement
5. Time Clock Record
6. Medical Records of Memphis Orthopedic Group
7. BMH-Memphis Work/School Excuse Letter
8. Medical Records of Cunningham Physical Medicine Clinic
9. Operative Note of Germantown Surgery Center
10. MetLife Short Term Disability Approval Letters

Technical record:[5]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Position Statement
5. Employee's Position Statement
6. Pre-Hearing Brief of the Employer
7. Supplemental and Amended Pre-Hearing Brief of the Employer

---

[5] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 10th day of October , 2016.

| Name | First Class Mail | Via Email | Service sent to: |
|---|---|---|---|
| Rueben V. Hill, Self-Represented Employee | X | X | ruebenvhill@gmail.com 2715 Cherry Road, Apt. 1448 Memphis, TN 38118 |
| S. Newton Anderson, Esq., Attorney for Employer | | X | sna@spicerfirm.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims

14